**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**


DEMARCO TAFT,
CARMELA TAFT

        Plaintiff,

                                Case No.:

                                Honorable Chief Judge Jonker


                v.

CITY OF LANSING;
CAPITAL CITY LABOR
PROGRAM, INC; FRATERNAL
ORDER OF POLICE, INC;
JAMES ZOLNAI, Individually
and in his Official Capacities;
JEFF KURTZ, Individually and
in his Official Capacities; SAM
KANDEL, Individually and in
his Official Capacities; RYAN
LAWRENCE, Individually and in
his Official Capacities; DAN
SALINEZ, Individually and in his
Official Capacities; CORY
CAMPBELL, Individually and in
his Official Capacities, and any
unknown, yet to be determined
persons or entities.

        Defendants.

Attorney John R. Beason III
(D.C. Bar No.1721583)
**The J.R. Beason Firm PLLC.**
Attorney for the Plaintiffs
853 McAlister St. (Shamika Jordan Way)
Benton Harbor, MI 49022
JRBeason3@TheJRBeasonFirm.com

## <u>PLAINTIFF'S COMPLAINT AND REQUEST FOR DAMAGES</u>

(1)

These Plaintiffs, residents of Lansing, MI, through counsel, comes and brings this action for tort based constitution and federal law violations against the Defendants, namely: violations of the Constitution's free exercise of free speech, right to self-defense, cruel and unusual punishment, equal protection, and due process clauses, as well as violations of federal civil rights acts of 1964 and Title 42, substantiating: conspiracy to violate civil rights, wrongful arrest, malicious prosecution, disparate treatment, gross negligence, battery, assault, and intentional infliction of emotional distress.  This complaint is brought on behalf of a West Michigan Reverend and his wife, both of whom have suffered injuries as a consequence of an on-going habitual custom of racial animus established and acted out by the Defendants.  The Plaintiffs assert that these violations of their unalienable constitutional rights were caused by the Defendants' repugnant, deliberate misconduct, neglect of duty, and indifference to immutable, protected-citizen suffering.

(2)

## <u>INTRODUCTION</u>

This is a civil action asserting claims under the Constitution, federal, and state law alleging violations of cruel and unusual punishment, free speech, self-defense, equal protection, due process, unlawful seizure, conspiracy to violate civil rights; equating to gross negligence, abuse of process, malicious prosecution, intentional discrimination, wrongful arrest, assault, battery, and intentional infliction of emotional distress. in violation of the U.S. Const. Amend. I, U.S. Const. Amend. II, U.S. Const. Amend. IV, U.S. Const. amend. V, U.S. Const. Amend. VIII, U.S. Const. amend. XIV., Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S.C. § 2000d, 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 249, 6 C.F.R. § 21.5, MI Const. Art 1 §2, MI Const. Art 1 §5, MI Const. Art 1 §6, MI Const. Art 1 §11, MI Const. Art 1 §16, MI Const. Art 1 §17, M.C.L.A § 780.972, M.C.L.A. § 600.2959, M.C.L.A. § 750.478, M.C.L.A. § 750.81.  The Plaintiffs requests a jury trial and seeks exemplary, compensatory, and equitable relief, as well an award of reasonable attorney fees, and cost pursuant to the U.S Constitution, 42 U.S.C.A. § 1983, the State of Michigan constitution, and M.C.L.A. § 600.6305.

(3)

## <u>JURISDICTION & VENUE</u>

This court has jurisdiction over all causes of action set forth in this complaint pursuant to 28 U.S.C § 139, as all plaintiffs and Defendants reside in the Western District of Michigan, as well the occurrence of the significant and relevant incidents giving rise to suit taking place in Lansing, MI, County of Ingham; within the jurisdiction of this Court.

(4)

## THE PARTIES

(5)

## THE PLAINTIFFS

Plaintiffs are citizens of the State of Michigan and residents in the City of Lansing, within the County of Ingham.

(6)

Plaintiffs Demarco and Carmela Taft, parents and concerned citizens in the City of Lansing, have suffered mental and emotional anguish, loss of quality of life, and reputation as a result of the racial animus inspired actions and deliberate indifference of the Defendants.

(7)

## THE DEFENDANTS

Defendants City of Lansing, Capital City Labor Program Inc., and the Fraternal Order of Police are municipal and corporate entities with active places of business in the County of Ingham, within the jurisdiction of this Court.

(8)

**FACTS GIVING RISE TO COMPLAINT**

(9)

In 2017, the Taft family relocated to Oakland Street in Lansing, MI.  The family lived peacefully at their new home for three years without any problems with their neighbors or any other residents in the community.  Mr. Taft became a Reverend and active member in the community over the course of his residence in the city.  In or around 2019, a Chicago-area transplant, supported by his Caucasian mother, began hosting a renegade outfit of the now defunct "Gangster Disciples."  Unlike the original Disciples infamous corporate drug sale structure and progressive political teachings aimed at deterring youths from criminal lifestyles and focusing on education attainments, Lansing's rebel faction allegedly primarily deals in truancy, criminal sexual conduct, and youth pharmaceutical narcotics sales.  In September of 2020, the Plaintiff's son got into an altercation with one said gang-member over the treatment of a young lady.  As a consequence, on September 11th, 2020, the Taft residence was shot at and damaged several times, leaving numerous bullet holes and bullet fragments in the residential structure.  The Lansing Police came to

the residence to investigate, picked up shell casings, and have not contacted the Plaintiffs in regards to the incident since.  The Lansing Police had been on notice about the violent group and did not act to remedy their terrorizing of the community

(10)

On the evening of November 14th, 2020, the Plaintiff heard a woman screaming in front of his house.  Upon investigating and looking out his front window, the Plaintiff saw a young man attacking a young lady.  The Plaintiff darted outside, separated the two, and advised the attacker to leave the young woman alone.  The attacker, a member of the violent rogue-group, replied with obscenities and informed the Plaintiff that he was one of the shooters who attacked his home a month earlier, and furthermore, that he would be back shortly with more gang support to terrorize and punish the Plaintiff for stopping his attack on a young caucasian woman.

(11)

Within a short time, a violent group of at least twenty gang-members came to the Taft residence to enact retribution upon the Plaintiff.  Carmela Taft, the Reverend's wife, began calling 911 and requesting police support and protection from the numerous violent thugs accosting and occupying their property.  The Police-Defendants came to the scene several times but refused to get out of their vehicles and watched as the Plaintiff stood his ground and defended his life and residence.  The Officers stated "we can't get out of the car unless

there is a victim", while watching the Plaintiff be a victim of breaking and entering, assault, battery, and attempted murder, as the gang members attempted to inflict grave bodily harm upon the Plaintiff in several waves of brazen homicidal attempts on his person.  While the Lansing Police officers came and left the scene ten times or more, and reportedly stated how they wanted to watch "them" kill each other,  the Plaintiff fought at least fifteen different gang-members for over an hour, before finally resorting to using a knife from his home to defend himself, others, and the residence.  When the gang's Caucasian mother called for medical support for her wounded members, then the Lansing Police got out of their cars and arrested the Plaintiff for attempted murder.  The Defendants only recognized the calls and acts against an aggrieved white woman as the call of a victim.  Many of the gang's members are the mixed-race children of Caucasian-American women and the Lansing Police showed preferential treatment to the emergency calls of Caucasian-Americans over the calls for help from full-blooded "Black" Americans when they ignored the numerous 911 calls from the Plaintiffs, the forced entering of his property, the attacks on his person, and only acted when getting calls from the same incident-scene from Caucasians.

(12)

Lansing Police Defendants are recorded several times stating they were "monitoring the situation", but never acknowledged the crimes being committed against the Plaintiffs.  911

records show the attackers stated that they would "shoot police officers in the face" and the dispatcher makes note of the threat of violence.   The Defendant Officers are recorded verifying their own fears of the assailants and how they retreated from the scene.  Lansing Police Officer Defendants watched from the corner of the street, but refused to come to the Plaintiff's home where ten 911 calls were made for emergency assistance.  At the same time, members of the Lansing City Labor Program Inc, Lansing's Police Union and a group organized and supported by the Fraternal Order of Police, were rebelling out of racial animus against the appointment of a Black police chief and his investigations into racial discrimination.  Lansing Officers had just recently been video recorded needlessly beating a restrained Black citizen and were in the process of revolting out racial animus against being held accountable by a Black police chief.  The Lansing Police deliberately refused to afford the Plaintiffs the same public benefit of a responsive police force because they are Black Americans, and in retaliation against all "Blacks" for having to work under, and be held accountable by a Black man.   In less than a month in his post,  Lansing's former Black Police chief resigned and took a position at Michigan State University's police force, citing the political environment as his reason for leaving.  Plaintiffs assert that the Lansing City Labor Program, Inc, the City of Lansing, and the Fraternal Order of Police have supported, condoned, and coalesced in a known habitual custom of racial animus in their ranks and membership, which caused the deprivation of the constitutional, civil rights of protected class members, and leading to substantial and various constitutional torts.  The

Municipal and corporate defendants knowingly and indifferently employ, empower, and support racial animus by providing guns, funds, equipment, planning-space, and the tangible support of the power of law enforcement authority to discriminatory, repugnant, racist actors.

(13)

After reviewing the Plaintiff's evidence, the Ingham County Prosecutor's chose to voluntarily dismiss all charges initiated against the Plaintiff pertaining to the self-defense of his home.  The Plaintiff was arrested in front of his community and charged with attempted murder on the records of the State, causing his family loss of dignity and reputation.  The Plaintiff unsuccessfully ran for city office in local elections where the Defendants attempted murder allegations marred his chances of gaining community support.  Several community members were apprehensive to support and vote for another resident whom the State accused of attempting to murder fellow citizens.  The Defendants have since killed and wounded members of the same violent faction in their own self-defense on multiple occasions.  In the absence of a responsive police force, when the Plaintiff asserted his own right to human dignity and self-preservation, and expressed it in self-defense by standing his ground and protecting his castle, he was arrested and defamed just moments after suffering an unwarranted traumatizing experience.  When the Plaintiff began to question the Defendants as to why they did not come to his aid, but were then

seeking to arrest him after ignoring his emergency calls, they left him in the police car and went to look for more witnesses from the violent-gang, most of whom refused to speak with them, outside of the gang-mother who called initially.  Because the Plaintiff spoke out against the racial animus and hypocritical actions of the Defendants, they used their authority as police officers to institute retaliatory wrongful criminal proceedings against the Plaintiff.

## THE PLAINTIFFS' ALLEGATIONS

(14)

The Class realleges paragraphs 1-14

(15)

## COUNT I.

## CRUEL & UNUSUAL PUNISHMENT : 8TH AMENDMENT, 42 U.S.C. § 2000d– (ALL DEFENDANTS)

(16)

The Class realiege paragraphs 1-16.

(17)

The Defendants violated the Plaintiffs constitutional rights to be free from cruel and unusual punishment and racial discrimination when they watched him fight for his life while ignoring several calls for police assistance for at least an hour.  The Defendants acted in racial animus motivated deliberate indifference to the potential of substantial harm being

incurred by the Plaintiffs, and then acted out repugnant retaliation by seeking murder charges against a protected class victim, a fact that would offend the reasonable notions of decency in this jurisdiction and the greater nation.

(18)

"Cruel and unusual punishment is just that — it is punishment that would offend prevailing standards of decency such that it is properly characterized as cruel and unusual. Mere negligence is not cruel and unusual punishment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Broyles v. Correctional Medical Services, Inc.*, No. 1:07-CV-690, at *4 (W.D. Mich. Apr. 14, 2008).  "To establish deliberate indifference that constitutes cruel and unusual punishment proscribed by the Eighth Amendment, a plaintiff must prove that (1) the defendant subjectively perceived facts from which the defendant could infer that plaintiff was at a substantial risk if plaintiff did not receive medical care; (2) the defendant did in fact draw that inference; and (3) the defendant then disregarded the risk to plaintiff. *Comstock v. McCrary,*273 F.3d 693, 702-06 (6th Cir. 2001). *Broyles v. Correctional Medical Services, Inc.*, No. 1:07-CV-690, at *4 (W.D. Mich. Apr. 14, 2008)."

(19)

"Under § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." 42 U.S.C.A. § 1983.  In addition Sec.1983, the U.S. Constitution and the State of Michigan Constitution also provide vindication and compensation for the violation of Constitutional Rights.

(20)

The Defendants violated the Plaintiffs constitutional rights to be free from cruel and unusual punishment and racial discrimination when they purposely refused to respond to calls for police assistance and chose to watch him fight for his life against known, brazenly violent criminals for their own personal entertainment and racial hate.  The Defendants acted in racially discriminatory deliberate indifference to the imminent potential of substantial harm to the Plaintiffs, and then continued to show racial animus and repugnant retaliation by seeking clearly unwarranted attempted murder charges against the Plaintiff solely because he was a Black American speaking-out about his right to protection and human dignity.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(21)

**COUNT II.**

## VIOLATIONS OF THE FIRST AMENDMENT: FREEDOM OF SPEECH, 42

## U.S.C. § 2000d – (ALL DEFENDANTS)

### (22)

The Class reallege paragraphs 1-22.

### (23)

The Defendants violated the Plaintiff's right to freedom of speech when they pursued attempted murder charges against him in retaliation for his out-spoken assessment of their professional failures while simultaneously being a Black American citizen.   The Defendants obstructed the Plaintiff's right to symbolic speech when they arrested him and intentionally mischaracterized his symbolic speech of expressing his right to self-preservation through physical acts and gestures of self-defense, as unwarranted and unlawful random acts of violence.

### (24)

"There is no justification for harassing people for exercising their constitutional rights[, the effect on freedom of speech] need not be great in order to be actionable." *Id*. at 397 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982))." *Hailey v. Blackman*, 1:18-cv-464, at *1 (W.D. Mich. May 10, 2022).   In order to be considered symbolic speech,   conduct must be "sufficiently imbued with elements of communication" to be entitled to First Amendment protection. *Id.* (citing *Spence v. Washington*, 418 U.S. 405, 409 (1974)). That threshold is "not a difficult one," however, as "'a narrow, succinctly

articulable message is not a condition of constitutional protection.'" *Blau,* 401 F.3d at 388

(quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston,* 515 U.S. 557, 569

(1995)).

(25)

The Defendants violated the Plaintiff's right to freedom of speech in a repugnant way when

they pursued attempted murder charges against him in retaliation for being a Black

American with the audacity to speak out against the blatantly biased and deliberately

indifferent treatment he was receiving.  The Defendants obstructed the Plaintiff's right to

symbolic speech when they wrongfully seized him after ignoring his pleas of assistance

and intentionally mischaracterized his symbolic speech of self-preservation through

physical acts and gestures of self-defense, as unwarranted and unlawful erratic acts of

violence.   The municipal and corporate defendants provided support and empowerment to

the individual representative defendants while being aware, or having reason to be aware,

of their nefarious intentions to violate the human and constitutional rights of protected

class citizens.

(26)

<strong>COUNT III.</strong>

<strong>VIOLATIONS OF THE SECOND AMENDMENT: RIGHT TO SELF DEFENSE –</strong>

<strong>VIOLATIONS OF 42 U.S.C.A. § 2000d,  MCL 780.972. (ALL DEFENDANTS)</strong>

(27)

The Class reallege paragraphs 1-27.

(28)

The Defendants violated the Plaintiffs' constitutional rights to self-defense when, after deliberately abandoning their duties as law enforcers for at least an hour, arrested the Plaintiff and charged him with attempted murder, after knowing and watching him stand his ground in his own property against the unlawful attacks of numerous violent criminals.

(29)

"Although the use of force to protect life and property is primarily the duty of the state, the state does not possess a monopoly in this regard. US Const. Am II; see also *District of Columbia v Heller*, 554 US 570, 628; 128 S Ct 2783; 171 L Ed 2d 637 (2008) (stating that "the inherent right of self-defense has been central to the Second Amendment right," and "the need for defense of self, family, and property is most acute" in the home); *McDonald v City of Chicago*, 561 US ___, ___; 130 S Ct 3020, 3044; 177 L Ed 2d 894 (2010) ("[T]he Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.") When the state fails to fulfill its responsibilities, people are more likely to be confronted with the need to exercise their right of self-defense, and difficult factual issues and complex legal issues are likely to arise. Any lack of clarity concerning the boundaries within which this right begins and ends will inevitably "entrap or mislead those [citizens] whose misfortunes compel a resort to them." *Pond*, 8 Mich at 173. *People v. Richardson*, 490 Mich. 115, 136-37 (Mich. 2011).

"*Heller* held the Second Amendment confers on an individual the right to keep and bear arms, specifically for the purposes of self-defense." *Heller*, 554 U.S. at 628; *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding that the Fourteenth Amendment makes the Second Amendment right to keep and bear arms for the purpose of self-defense applicable to the states). *United States v. Love*, No. 20-20327, at *3 (E.D. Mich. Dec. 3, 2021).  When the Plaintiff finally resorted to converting a kitchen knife into a self-defense weapon, he was acting to preserve his life and the life of those in his home. This reality was well known to the Defendants, when they ignored the Plaintiffs right to bear arms, stand his ground, and protect his castle, and instead, chose to attack him with the power of the State by initiating vehement criminal charges against him.

(30)

Michigan's stand your ground, castle law states: (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies: (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual. (2) An

16

individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. M.C.L.A § 780.972.

(31)

The Defendants' failure to acknowledge the Plaintiffs right to self-defense while being violently attacked in his home, coupled with their unwarranted seeking of attempted murder charges, after displaying an apathetic, indifferent response to the imminent danger of the Plaintiffs, equates to a constitutionally repugnant disparate treatment and violation of the Plaintiff's second amendment right to self-defense.   The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(32)

**COUNT IV.**

**VIOLATIONS OF U.S. CONST. AMEND. XIV;  EQUAL PROTECTION, SUBSTANTIVE, AND PROCEDURAL DUE PROCESS, 42 U.S.C. § 2000d (ALL DEFENDANTS)**

(33)

The Class reallege paragraphs 1-33.

(34)

The Defendants violated the Plaintiffs' constitutional rights to equal protection under the law, substantive, and procedural due process when they purposely ignored his pleas for emergency police assistance to provide themselves racially discriminatory entertainment of watching Black Americans kill each other instead of initiating the identical process enacted when Caucasian citizens call for emergency police assistance, causing substantial irreparable harm to the Plaintiff. The Defendants actions constitute deliberate indifference and racial animus inspired willful neglect of duty that caused substantial harm to the Plaintiffs.

(35)

""Deliberate indifference" describes a state of mind more blameworthy than negligence; it requires the showing of a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier*, 238 F.3d at 742. To establish that defendants acted with deliberate indifference, plaintiff must show that they both knew of and disregarded an excessive risk of harm; that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they actually draw the inference, but consciously disregarded it." *Farmer*, 511 U.S. at 837-39. *Soles v. Ingham County*, 316 F. Supp. 2d 536, 542 (W.D. Mich. 2004). Michigan has codified: "When any

duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00." M.C.L.A § 750.478.  The Plaintiffs assert that at all times the individual defendants had a sworn duty to uphold the Constitution of America and that all Defendants willfully refused to provide equal protection under law and true due process to the Plaintiffs and similarly situated protected class members for no other reason than their immutable racial characteristics.  The Defendants asserted that the Plaintiffs were not "worth" the trouble of doing their jobs, while the caucasians calling in support and behalf of the violent attackers, were worth the trouble of facing the bloodthirsty, police-hating, gang members.

(36)

"Under § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." 42 U.S.C.A. § 1983. "By its own terminology, § 1983 grants a cause of action to the party injured and, accordingly, a § 1983 action for deprivation of civil rights is an action personal to the injured party." 42 U.S.C.A. § 1983. Blair v. Harris, 993 F. Supp. 2d 721 (E.D. Mich. 2014).

(37)

The actions of the Defendants, in purposely ignoring the Plaintiffs pleas for police assistance for over an hour, and then using his self-defense as an attack on his freedom, character, and reputation, by instituting wrongful attempted murder charges against him, "shocks the conscience, infringes upon the decencies of civilized conduct, is so brutal and so offensive to human dignity, and interferes with rights implicit in the concept of ordered liberty." U.S. Const. Amend. 14. Guertin v. State, 912 F.3d 907 (6th Cir. 2019). The Defendants denied the Plaintiffs equal protection and due process under the law via racial animus motivated deliberate indifference. The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(38)

## COUNT V.

## VIOLATIONS OF 42 § U.S.C 2000d: INTENTIONAL DISCRIMINATION (ALL DEFENDANTS)

(39)

The Class reallege paragraphs 1-39.

(40)

The Defendants acted with intentional discrimination when they established, sustained, and acted out of a custom of racial animus when they came to the scene of the Plaintiffs

emergency calls only to "watch *them* kill each other" and misuse their empowerments by charging a victim as a violent criminal, just moments after causing him to fight for his life for sixty minutes.

(41)

The Defendants actions constitute "intentional discrimination under § 601 of Title VI, 42 U.S.C. § 2000d", because their discriminatory deliberate indifference caused the traumatic injuries of the Plaintiff. *White v. Engler*, 188 F. Supp. 2d 730, 743 (E.D. Mich. 2001). "To state a claim under Title VI, a plaintiff must show a discriminatory act and causation. *See* 42 U.S.C. § 2000(d). " *Gwanjun Kim v. Grand Valley State Univ.*, No. 1:11-CV-233, at *5 (W.D. Mich. Mar. 27, 2012). While in the process of acting out a mutiny against a Black police chief, the Defendants stated that they came to the scene of the Plaintiff's 911 calls solely to see Black Americans "kill each other" instead of protecting their rights to equal protection under the law. The Defendants watched from a safe distance while several violent attackers brazenly attacked the Plaintiff in waves that lasted sixty minutes. When Caucasians affiliated with the attackers called for emergency assistance, the Defendants arrested the Plaintiff and charged him as a violent criminal after watching him stand his ground and defend his castle, causing him severe mental trauma and irreparable emotional injuries.

(42)

The Defendants acted out intentional discrimination motivated by racial animus when they ignored their constitutional duties, and acted to induce an opportunity for themselves to attain and enjoy racially discriminatory entertainment by taking an opportunity to watch Black American citizens attack each other instead of defending the innocent from the cruel. The Defendants retreated from the scene and refused to intervene, thereby supporting and emboldening the group of criminals to attack and injure the Plaintiffs.  After watching and inspiring attacks against the Plaintiffs, the Defendants intended to further vilify and torment the victim-Plaintiffs by initiating false criminal charges against them solely because they are immutable protected class members, i.e. Black Americans.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(43)

## COUNT VI.

## CONSPIRACY TO VIOLATE CIVIL RIGHTS: VIOLATIONS OF  42 U.S.C. § 2000d, 42 U.S.C. § 1985(3) AND 42 U.S.C. § 1983 (ALL DEFENDANTS)

(44)

The Class reallege paragraphs 1-44.

(45)

The Defendants acted out a conspiracy to violate the civil rights of the Plaintiffs when they established an agreement among several officers to deliberately refuse to intervene on behalf of the Plaintiff and then collaborated to levy attempted murder charges against him after watching him stand his ground for their personal racial animus inspired entertainment, causing the Plaintiffs intense mental anguish and emotional harm.

(46)

"The elements of a conspiracy claim under 42 U.S.C. § 1985(3) do not merely require that an agreement be made for the purpose of depriving someone's constitutional rights. Rather, the conspiracy must exist for the purpose of depriving a person or class of persons of equal protection of the law." *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005)." *Hanas v. Inner City Christian Outreach, Inc.*, 542 F. Supp. 2d 683, 695 (E.D. Mich. 2008). "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks,* 771 F.2d 935, 943-944 (6th Cir. 1985). In order to state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Moore,* 890 F.2d at 834; *Hooks,* 771 F.2d at 943-944. *Matthews v. McQuiggin*, No. 2:10-cv-145, at *13 (W.D. Mich. Aug. 29, 2011).

(47)

The Defendants acted out a conspiracy to violate the Plaintiffs rights by denying him equal protection under the law and equal access to the public accommodation of an acting Police force when they purposely ignored his calls for assistance and watched him become the victim of several crimes for their personal entertainment solely because they are Black American protected class members.  The Defendants furthered their conspiracy to violate civil rights when they used their public trust and law enforcement empowerments to knowingly initiate unsubstantiated attempted murder charges against the Plaintiff, causing severe mental and emotional anguish.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(48)

## COUNT VII.

**MALICIOUS PROSECUTION AND ABUSE OF PROCESS: VIOLATIONS OF 4th AMENDMENT, 14th AMENDMENT EQUAL PROTECTION AND DUE PROCESS,42 U.S.C. § 2000d, SEC. 1983 (ALL DEFENDANTS)**

(49)

The Defendants violated the Plaintiffs constitutional rights when they initiated unsubstantiated attempted murder charges against him without possessing probable cause and being fully aware of the Plaintiffs plight and needs for self-defense.

(50)

"Freedom from malicious prosecution is a clearly established Fourth Amendment right." *Webb* , 789 F.3d at 659 (citing *Sykes v. Anderson* , 625 F.3d 294, 308 (6th Cir. 2010). In the Sixth Circuit, malicious prosecution consists of four elements: (1) a criminal prosecution was initiated against Plaintiff and Defendant "made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor. *Meeks v. City of Detroit*, 220 F. Supp. 3d 832, 839 (E.D. Mich. 2016).  The Defendants initiated a criminal prosecution against the Plaintiff and influenced and participated in the decision to prosecute the Plaintiff.  The Plaintiff suffered the fear of life and limb and potentially having to stand trial for felonious charges that were never supported by probable cause, as the Defendants watched the Plaintiff be attacked and defend himself for their personal entertainment.  The criminal proceedings were dismissed by the prosecution after reviewing the evidence verifying the Plaintiffs version of the story and denouncing the Plaintiffs allegations.

(51)

"Under state law, the tort of abuse of process involves using legal process for an ulterior purpose. The tort is not the same as a claim of malicious prosecution. In making a malicious-prosecution claim, a plaintiff asserts that the defendant lacked probable cause for pursuing criminal charges. *See* *Webb v. United States* , 789 F.3d 647, 659 (6th Cir. 2015). But in an abuse-of-process claim, the focus is not whether the was a valid basis for initiating legal proceedings against the plaintiff. Instead, the focus is on the defendant's purpose in initiating those proceedings. *See* *Friedman v. Dozorc* , 412 Mich. 1, 312 N.W.2d 585, 594 n.18 (1981) (providing that the gravamen of an abuse-of-process claim is " 'not ... the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish' " (quoting Restatement (Second) of Torts § 682 cmt. a (Am. L. Inst. 1975))); Dan B. Dobbs, Paul T. Hayden, and Ellen M. Bublick, *The Law of Torts* § 594 (2d ed.) ("The gist of the abuse of process tort is said to be the misuse of legal process primarily to accomplish a purpose for which it was not designed, usually to compel the victim to yield on some matter not involved in the suit, or to harass litigation opponents by clearly wrongful conduct."). So, "[f]or example, the [defendant] may procure an arrest of the plaintiff pursuant to a warrant and then offer to have the prosecution dismissed if the plaintiff will work in the [defendant's] fertilizer factory." *See* Dobbs, *supra* , § 594. In Michigan (and it appears to be the common law of other states as well), "a plaintiff must

plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding."'" *Friedman* , 312 N.W.2d at 594. *Mack v. Bessner*, 512 F. Supp. 3d 784, 798-99 (E.D. Mich. 2021).

(52)

The Defendants abused the criminal justice process and initiated a malicious prosecution against the Plaintiff when they possessed and acted on the ulterior motive of enacting retribution upon any and all Black American accessible in the course of their official duties, and upon coming upon the Plaintiffs emergency, improperly used the regular prosecution process, in which wrongful violent actors are pursued, to further punish a Black American citizen for being a Black American citizen.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(53)

## COUNT VIII.

## FALSE ARREST AND UNLAWFUL SEIZURE:  VIOLATIONS OF 4th AMENDMENT, 14th AMENDMENT, 42 U.S.C. § 2000d (ALL DEFENDANTS)

(54)

The Class reallege paragraphs 1-54.

(55)

The Defendants inflicted a false arrest and unlawful seizure against the Plaintiff in violation of constitutional and federal laws when they arrested him without probable cause and while knowing he only defended himself from imminent harm within his legal rights.

(56)

A false arrest is simply an "illegal or unjustified arrest" by law enforcement. *See Lewis v. Farmer Jack Division, Inc.*, 327 N.W.2d 893, 894 (Mich. 1982). "Where claims of false arrest and false imprisonment are based upon an allegedly improper arrest, Plaintiffs must establish that the arrest was illegal because it was not based upon probable cause." Diamond v. City of Kalamazoo, No. 1:15-CV-696, 2017 WL 3972046, at *2 (W.D. Mich. June 30, 2017), report and recommendation adopted, No. 1:15-CV-696, 2017 WL 3868807 (W.D. Mich. Sept. 5, 2017), aff'd sub nom. Lang v. City of Kalamazoo, 744 F. App'x 282 (6th Cir. 2018).

(57)

Under Michigan law, probable cause "is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich Ct. App. 2003). Probable cause "is a

commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians." *Id.* at 362-63. Where "the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide." *Id.* at 362. Diamond v. City of Kalamazoo, No. 1:15-CV-696, 2017 WL 3972046, at *3 (W.D. Mich. June 30, 2017), report and recommendation adopted, No. 1:15-CV-696, 2017 WL 3868807 (W.D. Mich. Sept. 5, 2017), aff'd sub nom. Lang v. City of Kalamazoo, 744 F. App'x 282 (6th Cir. 2018).

(58)

Any reasonable police officer, informed with the relevant facts of watching the Plaintiff fight for his life against violent attackers, and armed with commonsense, would know that there was no probable cause to arrest the Plaintiff and charge him with attempted murder for standing his ground and protecting his life in the absence of police intervention. Because the Defendants induced and furthered the Plaintiffs need to defend himself by retreating from gang-members and emboldening them to continue their brazen attacks on the Plaintiff, causing the Plaintiff to defend himself and his loved ones, they did not have an inkling of common sense probable cause to substantiate arresting the Plaintiff, transporting him, and charging him with felony attempted murder on the public records of this State.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware,

of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(59)

## COUNT IX.

## CONSTITUTIONAL TORT OF ASSAULT-- ALL DEFENDANTS

(60)

The Class reallege paragraphs 1-60.

(61)

By intentionally and purposefully maintaining a habitual practice racial animus and discriminatory retribution towards Black American citizens, denying these Plaintiffs equal protection under the law through their deliberate indifference and retaliatory abuse of refusing to act on their behalf and initiating malicious false charges, these Plaintiffs caused the assault of the Plaintiff when they invaded his dignity by arresting without probable cause and in contradiction to all known facts about the incident.

(62)

"Absent lawful authority, invasion of one's body is an indignity, an assault, and a trespass prohibited at common law." Guertin v. State, 912 F.3d 907 (6th Cir. 2019), cert. denied sub nom. City of Flint, Michigan v. Guertin, 140 S. Ct. 933, 205 L. Ed. 2d 522 (2020), and cert. denied sub nom. Busch v. Guertin, 140 S. Ct. 933, 205 L. Ed. 2d 522 (2020).  "Under Michigan law, an "assault" is defined as an attempt to commit a battery or an unlawful act

which places another person in reasonable apprehension of receiving an immediate battery." <u>Moher v. United States</u>, 875 F. Supp. 2d 739 (W.D. Mich. 2012). To recover civil damages for assault under Michigan law, a plaintiff must show an intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact. <u>Moher v. United States</u>, 875 F. Supp. 2d 739 (W.D. Mich. 2012).

(63)

Under Michigan law, an "assault" is defined as an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery. <u>Binay v. Bettendorf</u>, 601 F.3d 640 (6th Cir. 2010). Under Michigan law, a "battery" is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person; it is not necessary that the touching cause an injury. <u>Lakin v. Rund</u>, 318 Mich. App. 127, 896 N.W.2d 76 (2016). Finally, after fighting for his life and standing his ground against violent attackers who's bold acts put fear in the Defendants, the Defendants came to the aid of the attackers call for emergency assistance, and wrongfully assaulted the Plaintiff by putting him in handcuffs, forcing him into the back of a police car in front of the viewing public, and transporting him to the city jail, without probable cause or just right. The municipal and corporate defendants provided support and empowerment to the individual representative defendants

while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(64)

## COUNT X.

## CONSTITUTIONAL TORT OF BATTERY- ALL DEFENDANTS

(65)

The Class reallege paragraphs 1-66.

(67)

The Defendants inflicted an unconstitutional battery against the Plaintiff when they subjected him to an intentional, unconsented, offensive touching of his body by putting him under arrest and transporting him without probable cause or just right.

(68)

"A "battery" is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person; it is not necessary that the touching cause an injury. Lakin v. Rund, 318 Mich. App. 127, 896 N.W.2d 76 (2016). "Common-law battery does not require force capable of causing physical pain or injury." Stokeling v. United States, 139 S. Ct. 544, 202 L. Ed. 2d 512 (2019).

(69)

The Defendants inflicted an intentional, harmful, unconsented, offensive touching of the Plaintiff when they arrested and transported him to the city jail after ignoring his pleas for

police assistance, watching stand his ground against known violent assailants whom the Lansing Police themselves have both fled from and violently attacked in self-defense.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.  The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens.

(70)

## COUNT XI.

## CONSTITUTIONAL TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS --ALL DEFENDANTS

(71)

The Class reallege paragraphs 1-71.

(72)

The Defendant's unconstitutional, intentional, conspiracy to violate the civil rights of Black Americans through purposeful deliberate indifference and overt acts of racial animus inspired retribution and retaliation of false attempted murder charges, equate to intentional infliction of emotional distress.

(73)

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. Doe v. Roman Cath. Archbishop of Archdiocese of Detroit, 264 Mich. App. 632, 692 N.W.2d 398 (2004).  The test for whether conduct is sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress is whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!". Swain v. Morse, 332 Mich. App. 510, 957 N.W.2d 396 (2020), appeal denied, 957 N.W.2d 338 (Mich. 2021).  "Under Michigan law, "hedonic damages" refers to damages for the loss of the enjoyment of life as affected by physical pain and suffering, physical disability, impairment, and inconvenience affecting an individual's normal pursuits and pleasures of life." M.C.L.A. § 600.2922(6). Blair v. Harris, 993 F. Supp. 2d 721 (E.D. Mich. 2014).  "It is for the trial court to initially determine whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery in a suit alleging intentional infliction of emotional distress." Swain v. Morse, 332 Mich. App. 510, 957 N.W.2d 396 (2020), appeal denied, 957 N.W.2d 338 (Mich. 2021).

(74)

The Defendants acted outrageous and reckless when they intentionally caused and allowed the Plaintiff to be attacked by violent gang-members for their racial animus inspired

entertainment taste, and then, when the Plaintiff defended his right to live, the Defendants arrested him and charged him with attempted murder, a fact that would arouse and shock the consciousness of any member of a civilized society, causing them to exclaim, "Outrageous!"    The municipal and corporate defendants provided support and empowerment to the individual representative defendants while being aware, or having reason to be aware, of their nefarious intentions to violate the human and constitutional rights of protected class citizens. The Plaintiff Class seeks punitive, compensatory, hedonic, and equitable damages for the foul and abhorrent harms they have and continue to suffer.

(75)

## COUNT XII

## GROSS NEGLIGENCE: VIOLATIONS OF 42 U.S.C. § 2000d (ALL DEFENDANTS)

(76)

Plaintiff, realleges paragraphs 1-76.

(77)

As public servants, community service, and municipal entities, i.e., individual police officers, The City of Lansing, and its police union, the Defendants owed Mr. and Mrs Taft, and the community at large, a duty of care, and they breached that duty of care when they

forcibly arrested and held him in retaliation and seeking racial animus retribution against protected class members, thereby causing their extreme mental anguish and loss of enjoyment of life.

(78)

"A negligence claim requires four elements: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached the duty, (3) the defendant's breach of the duty proximately caused the plaintiff's injuries, and (4) the plaintiff suffered damages. *Hunley v. DuPont Auto*., 341 F.3d 491, 496 (6th Cir. 2003) (citing *Case v. Consumers Power Co*., 463 Mich. 1, 7 & n.6 (2000)). The question of duty is ordinarily a question of law for the court to decide. *Jackson v. Oliver*, 204 Mich. App. 122, 125 (1994). To determine "whether the relationship between the parties is sufficient to establish a duty, the proper inquiry is whether the defendant is under any obligation for the benefit of the particular plaintiff." *Maiden v. Rozwood*, 461 Mich. 109, 132 (1999) (internal quotation marks and citations omitted). This involves an analysis of "whether the relationship of the parties is of a sort that a legal obligation should be imposed on one for the benefit of another."" *Collins v. Ferguson*, No. 17-CV-10898, at *19-20 (E.D. Mich. Oct. 3, 2017).   The Sixth Circuit has acknowledged that "Government employees can be held liable for gross negligence under Michigan tort law." *Wells v. City of Dearborn Heights,* 538 Fed.Appx. 631, 641 (6th Cir.2013) (citing Mich. Comp. Laws § 691.1407(2)(c)). Acklin v. City of Inkster, 93 F. Supp. 3d 778, 800 (E.D. Mich. 2015).  "Michigan does allow gross negligence claims

based on allegations that also form the basis of a claim for intentional use of excessive force." Jackson v. Lubelan, 657 F. App'x 497, 502 (6th Cir. 2016).  "The Court has previously found that, drawing all reasonable inferences in favor of the Plaintiff, a Defendant could be held liable under a failure to intervene theory." Acklin v. City of Inkster, 93 F. Supp. 3d 778, 800 (E.D. Mich. 2015).

(79)

The Defendants owed the Plaintiffs a duty as citizens under their authority and protection. The Defendants breached that duty when they acted out racial animus inspired deliberate indifference to the Plaintiffs calls and pleas for police assistance to intervene and protect them from violent gang-members.  The Defendants further breached their duty when they initiated fraudulent and retributory criminal charges against the Plaintiff without probable cause and in bad faith.  The Defendants' breaches of duties are the proximate cause of the Plaintiffs trauma, mental, and emotional anguish because it is the fact that they watched for enjoyment and out of cowardice, as he fought numerous violent attackers in self-defense, and was consequently arrested and charged with attempted murder for it, that inflicted emotional and mental anguish upon the Plaintiff.  The Plaintiff is currently suffering mental anguish, emotional turmoil, loss of sleep, anxiety, paranoia, and severe stress.

(80)

The Defendant's knowingly, purposefully, and with wanton disregard for the Plaintiff's human and constitutional rights, breached the duty of care owed to Mr. and Mrs. Taft when they purposely watched as they defended their home alone, in the absence of police intervention or support, and then arrested, transported, and charged Rev. Taft with attempted murder, without probable cause, legal right, and in bad-faith with nefarious intentions, causing the Plaintiffs to suffer severe emotional distress, anxiety attacks, loss of sleep, headaches, depression, and mental anguish.

## PLAINTIFF CLASS' REQUEST FOR REMEDIES & RELIEF

### (81)

Mercifully, in the pursuit of Justice and pursuant to the aforementioned body of laws, the Plaintiffs request the following relief from this Court:

1. An Order declaring the conduct of Defendants unconstitutional.

2. An Order awarding exemplary and hedonic damages of $2,000,000;

3. An Order awarding compensatory, economic, and non-economic damages $3,000,000;

4. An Order awarding actual and reasonable attorney fees and litigation expenses of $200,000;

5. An Order mandating Racial Animus & Cultural Sensitivity Training for all City of Lansing and Fraternal Order of Police members and employees by a consulting firm of the Plaintiff's choosing.

6. An Order for all such other relief as the court deems equitable and reasonable.

Respectfully submitted,

**THE J.R. BEASON FIRM PLLC.**
By: \S\ John R. Beason III, Esq.
Attorney for the Plaintiffs
Attorney John R. Beason III
D.C. Bar No. 1721583
IBA No.: 1522438
JRBeason3@TheJRBeasonFirm.com
(269) 213-1426
www.JRBeasonLaw.com

December, 30th, 2022.

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEMARCO TAFT, ET AL.

      Plaintiff,

                          Case No.:

                          Honorable Chief Judge Jonker

      v.

CITY OF LANSING, ET AL.

      Defendants.

_____/

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury as to all issues triable as a matter of right.

                          Respectfully submitted,

                          **THE J.R. BEASON FIRM PLLC.**
                          \S\ John R. Beason III, Esq._____
                            John R. Beason III,
                            Attorney for the Plaintiffs
                            D.C. Bar No.: 1721583
                            IBA Bar No.: 1522438
                            853 McAlister St.
                            Benton Harbor, MI 49022
December 30th, 2022.                    JRBeason3@TheJRBeasonFirm.com